DAVIS, Judge.
 

 *780
 
 In this appeal, we once again address the quantum of proof necessary for a defendant to be lawfully convicted of possession with intent to sell or deliver marijuana. The evidence at trial established that the defendant's vehicle contained 11.5 grams of marijuana packaged in
 
 *781
 
 two sandwich bags, a digital scale, and 23 other loose sandwich bags. Because we conclude that the evidence-when viewed in the light most favorable to the State-was sufficient for a reasonable juror to have found him guilty of this offense, we affirm the defendant's convictions.
 

 Factual and Procedural Background
 

 The State introduced evidence at trial tending to establish the following facts: On 29 May 2015, Officer Miles Costa of the Nashville Police Department was driving his patrol vehicle on the east side of Nashville, North Carolina when he noticed expired tags on a car being driven by Robert Lindsey Coley, Jr. ("Defendant"). After verifying that the vehicle's registration was expired, Officer Costa pulled over Defendant's car and approached the driver's side.
 

 Defendant told Officer Costa that he did not have his driver's license with him and that he could not find his registration card. While speaking to Defendant, Officer Costa smelled the odor of marijuana and asked him to exit the vehicle. Officer Costa then asked Defendant if he had any marijuana in the
 
 *361
 
 car, and Defendant responded that there was some in the glove compartment. Defendant was placed in handcuffs while Officer Costa conducted a search of the vehicle. He found a sandwich bag containing 8.6 grams of marijuana in the glove compartment. Upon returning to his patrol vehicle to weigh the marijuana, Officer Costa was informed by Defendant that there was also a digital scale in the center console of the car.
 

 By this time, another officer had arrived on the scene, and the two officers searched the vehicle together. They found a digital scale, another sandwich bag containing 2.9 grams of marijuana, and two partially smoked marijuana cigars in the center console. Thirteen Dutch Masters cigar wrappers, along with one unopened package of cigars, were discovered elsewhere in the car. The officers found a box of sandwich bags in the backseat that had been opened along with 23 loose sandwich bags strewn throughout the vehicle.
 

 Defendant also had over $800 in cash on his person. He informed the officers that he had just cashed his paycheck, and Officer Costa found a pay stub in the vehicle.
 

 Defendant told the officers that he kept the scale in his car to ensure that he actually received from his sellers the precise amount of marijuana that he had purchased so as to avoid being "ripped off." He further stated that the sandwich bags were in his vehicle because "his drug dealers were cheap and ... [h]e had to provide his own bags."
 

 *782
 
 Defendant was indicted by a Nash County grand jury on 5 October 2015 on the charges of possession with intent to sell and deliver marijuana and possession of marijuana paraphernalia. A jury trial was held beginning on 29 August 2016 before the Honorable Quentin T. Sumner.
 

 Officer Costa testified on direct examination, in pertinent part, as follows:
 

 [PROSECUTOR]: Now, I want to talk about your law enforcement experience and training. You testified that this substance was marijuana. Have you had any particular training in the identification of marijuana?
 

 [OFFICER COSTA]: Yes, ma'am.
 

 [PROSECUTOR]: Please explain that training for us.
 

 [OFFICER COSTA]: We-we go through a-we go to a control room, controlled area, controlled classroom and marijuana's presented to us in big amounts, small amounts. And the smell, we're allowed to smell it. We're allowed to touch it. We're allowed to feel it. Everything like that.
 

 ....
 

 [PROSECUTOR]: ... Are you familiar with how marijuana is commonly sold?
 

 [OFFICER COSTA]: Yes, ma'am.
 

 [PROSECUTOR]: Tell me about that.
 

 [OFFICER COSTA]: Marijuana is, majority of the time, commonly sold in your nickel bags or your dime bags.
 

 [PROSECUTOR]: Tell me what exactly is a nickel bag?
 

 [OFFICER COSTA]: A nickel bag is .5 grams of marijuana. Usually costs, depending on the grade of marijuana, $5. A dime bag would be $10 and that is a-that's one gram of marijuana.
 

 [PROSECUTOR]: And in selling those quantities, how are they typically packaged? Or how is the marijuana typically packaged?
 

 [OFFICER COSTA]: They're packaged in a sandwich bag.
 

 *783
 
 ....
 

 [PROSECUTOR]: Tell me why you chose to charge the Defendant with possession with intent to sell or deliver versus just possessing the marijuana?
 

 [OFFICER COSTA]: Yes, ma'am; the-with the amount of marijuana and the two individual bags, normally if somebody is going to have a large amount of marijuana, they're going to have it one [sic] bag. The two-two separate bags, the amount of marijuana, the sandwich bags all over the vehicle, the drug scale[.]
 

 ....
 

 [PROSECUTOR]: Now, you said that you took the amount, the way it was divided and packaged and the sandwich bags and the scale as factors that went towards your charging. Now, [Defendant] offered
 
 *362
 
 an explanation that [Defendant's counsel] has presented to the jury. Was that explanation not sufficient enough to deter you from charging the possession with intent to sell or deliver?
 

 [OFFICER COSTA]: Yes, ma'am. The explanation did not make any sense to me. I've never heard it before coming from anybody else. Normally, people who have marijuana inside of the vehicle do not have several sandwich bags inside of the vehicle.
 

 At the close of the State's evidence, Defendant moved to dismiss the charge of possession of marijuana with intent to sell or deliver based on insufficiency of the evidence. The trial court denied his motion.
 

 During Defendant's case-in-chief, the following exchange occurred between Defendant and his attorney:
 

 [DEFENDANT'S COUNSEL]: What's the deal with the sandwich bags?
 

 [DEFENDANT]: The dealers who I was dealing with they just wouldn't have them, they wouldn't supply them. They would say they don't want to risk having them and stuff like that. They just wouldn't have them, so I would use it to what I would pick a week [sic] to put them into the bag.
 

 *784
 
 ....
 

 [DEFENDANT'S COUNSEL]: Now, why did you have-also found in your car was a scale. Why did you have the scale?
 

 [DEFENDANT]: To make sure I was getting what I was purchasing. I mean, people that I'm dealing with, it's not like it's a pre-packaged product where I'm going to know exactly what I'm getting is what they're telling me. So I would check it to make sure that it is what they say it is, the amount wise.
 

 ....
 

 [DEFENDANT'S COUNSEL]: Why did you have two bags?
 

 [DEFENDANT]: One of them I actually had forgotten about. ...
 

 [DEFENDANT'S COUNSEL]: Why-how did you forget about a bag of marijuana?
 

 [DEFENDANT]: It just wasn't good quality and I ended up buying something else and I guess I just forgot it was in there.
 

 Defendant renewed his motion to dismiss at the close of all the evidence, and the trial court once again denied his motion. On 30 August 2016, the jury convicted him of both charges. The trial court consolidated the convictions and sentenced Defendant to a term of imprisonment between 6 and 17 months, suspended the sentence, and placed him on supervised probation for 18 months. Defendant gave oral notice of appeal in open court prior to the entry of the judgment.
 

 Analysis
 

 I. Appellate Jurisdiction
 

 As an initial matter, we must determine whether we possess jurisdiction over this appeal. Rule 4(a) of the North Carolina Rules of Appellate Procedure states, in pertinent part, as follows:
 

 (a) Manner and time. Any party entitled by law to appeal from a judgment or order of a superior or district court rendered in a criminal action may take appeal by:
 

 *785
 
 (1) giving oral notice of appeal at trial ....
 

 N.C. R. App. P. 4(a).
 

 Here, Defendant gave oral notice of appeal in open court after the jury returned its verdict but prior to the entry of judgment by the trial court. Thus, because he did not give notice of his appeal following entry of the judgment, his right to appeal has been lost based on his failure to comply with Rule 4(a).
 
 See
 

 State v. Robinson
 
 ,
 
 236 N.C. App. 446
 
 , 448,
 
 763 S.E.2d 178
 
 , 179 (2014) (right of appeal lost where Defendant "gave notice of appeal in open court following the jury's verdict, but failed to give notice of appeal following entry of the trial court's final judgment"),
 
 aff'd as modified
 
 ,
 
 368 N.C. 402
 
 ,
 
 777 S.E.2d 755
 
 (2015).
 

 Defendant has filed a petition for writ of
 
 certiorari
 
 requesting appellate review of his convictions in the event that his notice of appeal is deemed by this Court to be defective. Pursuant to Rule 21(a)(1) of the Appellate Rules, this Court may, in its discretion, grant a petition for writ of
 
 certiorari
 
 and review an order or judgment entered by the
 
 *363
 
 trial court "when the right to prosecute an appeal has been lost by failure to take timely action. ..." N.C. R. App. P. 21(a)(1).
 

 Here, the State does not contend that it was misled by Defendant's defective notice of appeal and acknowledges that it is within this Court's discretion to allow the petition.
 
 See
 

 State v. Springle
 
 ,
 
 244 N.C. App. 760
 
 , 763,
 
 781 S.E.2d 518
 
 , 521 (2016) ("[A] defect in a notice of appeal should not result in loss of the appeal as long as the intent to appeal can be fairly inferred from the notice and the appellee is not misled by the mistake." (quotation marks, ellipsis, and citation omitted)).
 

 In our discretion, we elect to grant Defendant's petition for writ of
 
 certiorari
 
 and proceed to address the merits of his argument.
 
 See
 

 Robinson
 
 ,
 
 236 N.C. App. at 448
 
 ,
 
 763 S.E.2d at 180
 
 (granting defendant's petition for
 
 certiorari
 
 where oral notice of appeal was given after jury verdict but prior to entry of judgment).
 

 II. Denial of Motion to Dismiss
 

 Defendant's sole argument on appeal is that the trial court erred in denying his motion to dismiss the possession with intent to sell or deliver marijuana charge. His primary contention is that the quantity of marijuana found in his vehicle was too small to allow this charge to be submitted to the jury.
 

 "A trial court's denial of a defendant's motion to dismiss is reviewed
 
 de novo
 
 ."
 
 State v. Watkins
 
 , --- N.C. App. ----, ----,
 
 785 S.E.2d 175
 
 , 177
 
 *786
 
 (citation omitted),
 
 disc. review denied
 
 ,
 
 369 N.C. 40
 
 ,
 
 792 S.E.2d 508
 
 (2016). On appeal, this Court must determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator[.]"
 
 State v. Fritsch
 
 ,
 
 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (citation omitted),
 
 cert. denied
 
 ,
 
 531 U.S. 890
 
 ,
 
 121 S.Ct. 213
 
 ,
 
 148 L.Ed.2d 150
 
 (2000).
 

 Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. Smith
 
 ,
 
 300 N.C. 71
 
 , 78-79,
 
 265 S.E.2d 164
 
 , 169 (1980). Evidence must be viewed in the light most favorable to the State with every reasonable inference drawn in the State's favor.
 
 State v. Rose
 
 ,
 
 339 N.C. 172
 
 , 192,
 
 451 S.E.2d 211
 
 , 223 (1994),
 
 cert. denied
 
 ,
 
 515 U.S. 1135
 
 ,
 
 115 S.Ct. 2565
 
 ,
 
 132 L.Ed.2d 818
 
 (1995). "Contradictions and discrepancies are for the jury to resolve and do not warrant dismissal."
 
 Smith
 
 ,
 
 300 N.C. at 78
 
 ,
 
 265 S.E.2d at 169
 
 .
 

 Pursuant to
 
 N.C. Gen. Stat. § 90-95
 
 , "the offense of possession with intent to sell or deliver has three elements: (1) possession; (2) of a controlled substance; with (3) the intent to sell or deliver that controlled substance."
 
 State v. Blakney
 
 ,
 
 233 N.C. App. 516
 
 , 519,
 
 756 S.E.2d 844
 
 , 846 (citation omitted),
 
 disc. review denied
 
 ,
 
 367 N.C. 522
 
 ,
 
 762 S.E.2d 204
 
 (2014). We have held that while "intent to sell or deliver may be shown by direct evidence, it is often proven by circumstantial evidence from which it may be inferred."
 
 State v. Wilkins
 
 ,
 
 208 N.C. App. 729
 
 , 731,
 
 703 S.E.2d 807
 
 , 809 (2010) (brackets, quotation marks, and citation omitted). Such intent "may be inferred from (1) the packaging, labeling, and storage of the controlled substance, (2) the defendant's activities, (3) the quantity found, and (4) the presence of cash or drug paraphernalia."
 
 State v. Nettles
 
 ,
 
 170 N.C. App. 100
 
 , 106,
 
 612 S.E.2d 172
 
 , 176 (citation omitted),
 
 disc. review denied
 
 ,
 
 359 N.C. 640
 
 ,
 
 617 S.E.2d 286
 
 (2005). Although the "quantity of the controlled substance alone may suffice to support the inference of an intent to transfer, sell, or deliver, it must be a substantial amount."
 
 Wilkins
 
 ,
 
 208 N.C. App. at 731
 
 ,
 
 703 S.E.2d at 810
 
 (quotation marks and citation omitted).
 

 It is instructive to examine prior cases from our appellate courts on this issue. In
 
 Blakney
 
 , the defendant's vehicle contained 84.8 grams of marijuana packaged in a number of containers, including "two sandwich bags, four 'dime bags,' and five other types of bags."
 
 Blakney
 
 ,
 
 233 N.C. App. at 520
 
 ,
 
 756 S.E.2d at 847
 
 . Additionally, a box of sandwich bags, a digital scale, and a "large amount of cash" were discovered in the car.
 
 Id.
 
 at 517,
 
 756 S.E.2d at 845
 
 . We held that the evidence was sufficient to survive a motion to dismiss, concluding as follows:
 

 *364
 

 *787
 
 [T]he manner in which the marijuana was packaged (such as four "dime bags") raised more than an inference that defendant intended to sell or deliver the marijuana. Further, the presence of items commonly used in packaging and weighing drugs for sale-a box of sandwich bags and [a] digital scale[ ]-along with a large quantity of cash in small denominations provided additional evidence that defendant intended to sell or deliver marijuana, as opposed to merely possessing it for his own personal use[.]
 

 Id.
 
 at 520,
 
 756 S.E.2d at 847
 
 .
 

 State v. Williams
 
 ,
 
 71 N.C. App. 136
 
 ,
 
 321 S.E.2d 561
 
 (1984), involved 27.6 grams of marijuana recovered from the defendant's jacket.
 
 Id.
 
 at 139,
 
 321 S.E.2d at 564
 
 . The marijuana "was packaged in seventeen separate, small brown envelopes known in street terminology as 'nickel or dime bags.' "
 
 Id.
 
 at 140,
 
 321 S.E.2d at 564
 
 . The defendant in that case argued that the amount of marijuana at issue was too small to raise an inference that he intended to sell or deliver the drugs.
 
 Id.
 
 at 139,
 
 321 S.E.2d at 564
 
 . In ruling that the evidence was sufficient to survive a motion to dismiss, we stated that the "[d]efendant's argument would be persuasive except for the evidence of how the 27.6 grams of marijuana was packaged."
 
 Id.
 
 at 139-40,
 
 321 S.E.2d at 564
 
 .
 

 Similarly, in
 
 State v. Yisrael
 
 , --- N.C. App. ----,
 
 804 S.E.2d 742
 
 (2017), we held that sufficient evidence supported a possession with intent to sell or deliver charge where the defendant possessed a total of 10.88 grams of marijuana packaged in three separate baggies-one "dime bag" and two larger bags.
 

 Id.
 

 at ----,
 
 804 S.E.2d at 743
 
 . The defendant in
 
 Yisrael
 
 was also carrying $1,504 and in possession of a stolen handgun.
 

 Id.
 

 at ----,
 
 804 S.E.2d at 745-46
 
 .
 

 We determined that "[t]his quantity of illegal drugs and its packaging ...; the large amount of unsourced cash on [the defendant's] person; and the stolen and loaded handgun [are] sufficient to support a reasonable inference that [the defendant] intended to sell or deliver the marijuana he admittedly possessed ...."
 

 Id.
 

 at ----,
 
 804 S.E.2d at
 
 747 ;
 
 see also
 

 State v. Baxter
 
 ,
 
 285 N.C. 735
 
 , 738,
 
 208 S.E.2d 696
 
 , 698 (1974) (holding that "[t]he jury could reasonably infer an intent to distribute from the amount of the substance found, the manner in which it was packaged and the presence of other packaging materials" where 219 grams of marijuana were packaged in 16 small envelopes and 28 empty envelopes were found nearby).
 

 *788
 
 Conversely, in
 
 Wilkins
 
 and
 
 Nettles
 
 we held that small quantities of drugs unaccompanied by evidence that the substances were packaged for sale were insufficient to raise an inference of intent to sell or deliver. The defendant in
 
 Wilkins
 
 possessed 1.89 grams of marijuana contained in three small bags and $1,264 in cash.
 
 Wilkins
 
 ,
 
 208 N.C. App. at 730
 
 ,
 
 703 S.E.2d at 809
 
 . Regarding the packaging, this Court stated that "[w]hile small bags may typically be used to package marijuana, it is just as likely that defendant was a consumer who purchased the drugs in that particular packaging from a dealer."
 
 Id.
 
 at 732,
 
 703 S.E.2d at 810
 
 . We concluded as follows:
 

 Had defendant possessed more than 1.89 grams of marijuana, or had there been additional circumstances to consider, we may have reached a different conclusion; however, given the fact that neither the amount of marijuana nor the packaging raises an inference that defendant intended to sell the drugs, the presence of the cash as the only additional factor is insufficient to raise the inference.
 

 Id.
 
 at 733,
 
 703 S.E.2d at 810
 
 (citation omitted).
 

 Nettles
 
 involved the discovery of four to five crack cocaine rocks weighing 1.2 grams in the defendant's vehicle.
 
 Nettles
 
 ,
 
 170 N.C. App. at 105
 
 ,
 
 612 S.E.2d at 175
 
 . The police also seized a safety pin from the defendant's living room.
 
 Id.
 
 at 102,
 
 612 S.E.2d at 173
 
 . Although "officers testified that a safety pin typically is utilized by crack users to clean a crack pipe, there were no other drugs or drug paraphernalia typically used in the sale of drugs found on the premises."
 
 Id.
 
 at 107,
 
 612 S.E.2d at 177
 
 . In ruling that there was insufficient evidence of an intent to sell or deliver, we noted the absence of any testimony "that the drugs were packaged, stored, or labeled in a manner consistent with the sale
 
 *365
 
 of drugs."
 
 Id.
 
 at 107,
 
 612 S.E.2d at 176
 
 . Ultimately, we concluded that even "[v]iewed in the light most favorable to the State, the evidence tends to indicate defendant was a drug user, not a drug seller."
 
 Id.
 
 at 107,
 
 612 S.E.2d at 177
 
 .
 

 Thus, in ruling upon the sufficiency of evidence in cases involving the charge of possession with intent to sell or deliver, our courts have placed particular emphasis on the amount of drugs discovered, their method of packaging, and the presence of paraphernalia typically used to package drugs for sale. Moreover, our case law demonstrates that this is a fact-specific inquiry in which the totality of the circumstances in each case must be considered unless the quantity of drugs found is so substantial that this factor-by itself-supports an inference of
 
 *789
 
 possession with intent to sell or deliver. With these principles in mind, we now turn to the evidence in the present case.
 

 As noted above, Defendant's vehicle contained a total of 11.5 grams of marijuana contained in two sandwich bags. Additionally, a digital scale and an open box of sandwich bags were found along with 23 loose sandwich bags. Viewed in isolation, the relatively small quantity of marijuana discovered in the vehicle would not be enough to support an inference that Defendant possessed the drugs with the intent to sell or deliver.
 
 See
 

 State v. Wiggins
 
 ,
 
 33 N.C. App. 291
 
 , 294,
 
 235 S.E.2d 265
 
 , 268 (holding that discovery of 215.5 grams of marijuana was, by itself, insufficient to survive a motion to dismiss),
 
 cert. denied
 
 ,
 
 293 N.C. 592
 
 ,
 
 241 S.E.2d 513
 
 (1977). However, given the additional presence of the digital scale and the large number of sandwich bags found in Defendant's vehicle, we are satisfied that the State's evidence was sufficient to create a question for the jury. Despite Defendant's testimony that he only utilized the scale and sandwich bags in connection with his own personal marijuana use, a rational jury could have found his explanation to lack credibility.
 

 Even assuming that this case can be characterized as a close one, we have held that "[i]n borderline or close cases, our courts have consistently expressed a preference for submitting issues to the jury."
 
 Yisrael
 
 , --- N.C. App. at ----,
 
 804 S.E.2d at 747
 
 (brackets, quotation marks, and citation omitted). Accordingly, we hold that the trial court did not err in denying Defendant's motion to dismiss.
 

 Conclusion
 

 For the reasons stated above, we conclude that Defendant received a fair trial free from error.
 

 NO ERROR.
 

 Judges ZACHARY and BERGER concur.